IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SAM BUDACH, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NIBCO, INC., )<br>)<br>Defendant. ) | No. 2:14-cv-04324 |

**ORDER**

Plaintiff Sam Budach, a homeowner, alleges that Defendant NIBCO, Inc.'s PEX plumbing system, which was installed in his home, failed and damaged his home. Budach seeks damages, and declaratory and injunctive relief. NIBCO filed a motion to dismiss. [Doc. 24.] During the parties' oral argument on NIBCO's motion, Budach requested and was permitted leave to file a motion to amend the Complaint. [Doc. 39.] Budach filed a motion to amend, and submitted a proposed First Amended Complaint, with the changes highlighted. [Doc. 41.] During oral argument, NIBCO also requested and was permitted leave to file supplemental authority, and subsequently did so. [Doc. 40.]

For the reasons discussed below, NIBCO's motion to dismiss is granted in part and denied in part. Budach's motion for leave to amend is denied but he is given leave to file an amended complaint consistent with this order.

**I. Background[1]**

NIBCO manufactures, warrants, advertises, and sells the PEX plumbing system throughout the United States. The system includes cross-linked polyethylene plumbing tubes (PEX Tubing), as well as the brass fittings (PEX Fittings) required to connect the PEX Tubing, and the stainless steel clamps (PEX Clamps) required to join the PEX Tubing and PEX Fittings.

The PEX Tubing is susceptible to failure caused by "slow growth cracking mechanisms consistent with oxidative failure and/or creep rupture. These slow growth cracking mechanisms have been caused by insufficient stabilization and/or improper cross-linking of the PEX material used by NIBCO to manufacture its PEX Tubing." [Doc. 1, p. 12, ¶ 48.]

The PEX Fittings are susceptible to decalcification corrosion because of the material with which they were manufactured. Further, the material with which the PEX Clamps were manufactured, and the clamp design, make the clamps susceptible to chloride-induced stress corrosion cracking. Decalcification corrosion and chloride-induced stress corrosion cracking can cause PEX plumbing system to fail. In the course of foreseeable and intended use, the PEX Fittings and Clamps are exposed to elements that cause corrosion. NIBCO "knew or should have known" that the PEX Fittings and Clamps were susceptible to failure. [*Id.*, p. 15, ¶ 64; p. 17, ¶¶ 70-71.]

PEX Tubing is sold with an express warranty that states in part:

> NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years

---

[1] These facts appear in Budach's original complaint. [Doc. 1.] For purposes of deciding NIBCO'S motion to dismiss, the Court accepts Budach's factual allegations as true and construes them in the light most favorable to Budach. *See Stodghill v. Wellston Sch. Dist.,* 512F.3d 472, 476 (8th Cir. 2008).

from the date of purchase when installed by a licensed professional contractor. This 25-year warranty is voided if any non-NIBCO products are used in the PEX system. NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions, use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period ten (10) years from the date of purchase. NIBCO INC. warrants NIBCO® associated hardware and tools for a period of 90 days from the date of purchase.

In the event any defect occurs which the owner believes is covered by this warranty, the owner should immediately contact NIBCO Technical Services, either in writing or by telephone at 1.888.446.4226 or 1.574.295.3000. The owner will be instructed to return said tube, fittings or accessories, at the owner's expense, to NIBCO INC., or an authorized representative for inspection. In the event said inspection discloses to the satisfaction of NIBCO INC. that said tube, fitting or accessory is defective, a replacement shall be mailed free of charge to the owner.

**IN ORDER FOR THIS LIMITED WARRANTY TO APPLY, THE ABOVE REFERENCED PRODUCTS MUST BE INSTALLED BY A LICENSED PROFESSIONAL PLUMBER IN ACCORDANCE WITH NIBCO INSTALLATION INSTRUCTIONS AND IN COMPLIANCE WITH ALL APPLICABLE CODE REQUIREMENTS. FAILURE TO DO SO WILL VOID ALL APPLICABLE WARRANTIES.**

[Doc. 25-1, p. 2, emphasis in original.]

Budach's home was built in 2006. A licensed professional contractor installed the plumbing system, using NIBCO PEX Products: PEX Tubing, PEX Fittings, and PEX Clamps and installation accessories. A hot water line was installed as a part of the system, and water was supplied from a local, municipally treated water source. Budach moved into the home in 2006 after construction was completed and began using it as his primary residence. In January 2012, Budach noticed water pooling near the master bathroom in his home. A licensed plumber discovered a leak in the water line near the master bathroom and repaired it. Budach noticed another leak in another area of the home in August 2013. A licensed plumber found a leak in the

3

recirculation line and repaired it. In August 2014, Budach noticed water seeping into his kitchen from behind a set of cabinets. A licensed plumber determined there was another leak in the recirculation line and repaired it. A week after the leak in the kitchen, Budach heard a hissing sound in a wall of his home and immediately shut off the water. After cutting through the drywall, a licensed plumber found a leak in the water pipe behind the bathroom and repaired it. Every leak caused damage to various parts of Budach's home, such as carpets, walls, and cabinets, which Budach had to have repaired.[2]

In his proposed First Amended Complaint, Budach adds that he retained a general contractor to construct his home, and that it was the general contractor who retained the professional plumbing contractor to install the home's plumbing system. [Doc. 41, p. 8, ¶¶ 13-14.] Budach further alleges that the professional plumbing contractor, acting as Budach's agent, purchased the NIBCO PEX Products that were installed in Budach's home, and that the professional plumbing contractor installed the entire plumbing system using PEX Products as required by the terms of the warranty. [*Id.*, p. 8, ¶¶ 15-16.] Budach also alleges that the January 2012, August 2013, and August 2014 leaks in his home were caused by failed PEX Fittings. [*Id.*, pp. 9-10, ¶¶ 21, 25, and 28.]

NIBCO "knew or should have known that the PEX products were not suitable for use within water-carrying plumbing systems and that the PEX products suffered from" defects. [*Id.*, p. 3, ¶ 9.] Budach "substantially complied with [his] obligations under the NIBCO PEX warranty. NIBCO, however, has failed to fulfill its obligation to replace the defective PEX Tubing and compensate [Budach]…for the foreseeable property damage it has caused." [*Id.*, p. 13, ¶ 50.] Budach took corrective action at his own expense so as to mitigate any further

---

[2] The Court has considered these facts as if set out in Plaintiff's original complaint.

damage related to failure of the PEX products.

Budach's Complaint contains seven counts:

> I. Breach of Express Warranty;
> II. Breach of Implied Warranty of Merchantability;
> III. Breach of Implied Warranty of Fitness for a Particular Purpose;
> IV. Negligence;
> V. Violation of the Missouri Merchandising Practices Act (MMPA);
> VI. Unjust Enrichment; and
> VII. Declaratory and Injunctive Relief.

[*Id.*]

**II.  Discussion**

NIBCO argues dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) because Budach fails to state a claim upon which relief can be granted, and that the MMPA claim, which sounds in fraud, also fails because Budach does not meet the Rule 9(b) heightened pleading standard.

Dismissal under Rule 12(b)(6) is appropriate when a complaint fails to allege facts establishing each element of the claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Thus, while well-pleaded allegations of fact are accepted as true, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not. *Iqbal*, 556 U.S. at 678. The allegations must rise above the "speculative" or "conceivable," and must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547, 555, 563, 570; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"); *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) ("Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate.").

The plausibility standard is not akin to a "probability requirement". *Iqbal,* 129 S.Ct. at 1949. Determining whether a complaint states a plausible claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where the court finds that the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the pleader is not entitled to relief. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

A fraud claim is subject to the more stringent pleading requirements of Rule 9(b), which requires "the circumstances constituting fraud" to be "state[d] with particularity." Under Rule 9(b), the complaint must allege facts such as "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (citation and internal quotation marks omitted).

### A. Count I, Breach of Express Warranty; Count II, Breach of Implied Warranty of Merchantability; and Count III, Breach of Implied Warranty of Fitness

NIBCO argues that the breach of express and implied warranty counts must be dismissed because Budach did not plead that he provided NIBCO with pre-suit notice of breach. Budach admitted at oral argument that he did not provide pre-suit notice. [Doc. 42.]

Under Missouri law, the "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Mo. Rev. Stat. § 400.2-607(3)(a). *See also Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. 2010) (plaintiff must establish that he "notified the seller of the nonconformity in a timely fashion" to assert express warranty claim); *Hope v. Nissan N.A.,* 353 S.W.3d 68, 91-92 (Mo. App. W.D. 2011)(notification to seller required to assert implied

6

warranty claim). Here, there is no dispute that Budach failed to give the notice required to bring his three warranty claims.

Therefore, Counts I, II, and III are dismissed without prejudice.

**B. Count IV, Negligence**

NIBCO argues that Budach's negligence claim does not satisfy the *Iqbal* and *Twombly* pleading standards. It also argues that the claim is partially precluded by the economic loss doctrine.

**1. Sufficiency of pleading**

Although the Supreme Court's decisions in *Twombly* and *Iqbal* clarified the meaning of Rule 8(a)(2), they "did not abrogate the notice pleading standard of Rule 8(a)(2)." *Hamilton v. Palm,* 621 F.3d 816, 817 (8th Cir. 2010). In the notice pleading framework, "Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 514 (2002) (*overruled in part on other grounds by Twombly,* 550 U.S. at 561–63). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* See *Alame v. Norred & Associates, Inc.*, 2:13-CV-04280-NKL, 2014 WL 2574418, at *3-4 (W.D. Mo. June 9, 2014).

Under Missouri law,

> [A] products liability case can be based on strict liability, breach of warranty, or negligence. For products liability to be founded in negligence, the plaintiff must prove the existence of a duty, the defendant's breach thereof, and proximately caused damages…. In a negligence action, whether a duty exists is entirely a question of law for the court[.]

7

Case 2:14-cv-04324-NKL   Document 44   Filed 06/22/15   Page 7 of 17

*Morrison v. Kubota Tractor Corp.,* 891 S.W.2d 422, 425 (Mo. Ct. App. 1994) (citations omitted). *See also Sandage v. Bankhead Enterprises, Inc.,* 177 F.3d 670, 675 (8th Cir. 1999) (same).

Budach alleged in his negligence count that:

> 99. Defendant owed Plaintiff and the putative Class a duty to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the PEX Products.
>
> 100. The failure of the PEX Products in Plaintiff's and the Class member's residential and commercial properties was caused by poor and improper workmanship and manufacture, negligence, and lack of reasonable and ordinary care by NIBCO, acting through its duly authorized agents, servants, and employees. Defendant failed to properly test and/or evaluate the PEX Products to ensure they would not fail when they were used for their intended purpose.
>
> 101. After being notified of the foregoing breaches, NIBCO took no action to cure its breaches of its duty to exercise ordinary care, thus requiring Plaintiff and the putative Class to take corrective action at their own cost and expense to avoid continued failure of the PEX Products, as well as further damage to their homes, business and personal property.
>
> 102. As a direct and proximate result of NIBCO's negligence, carelessness and breaches of its duty of reasonable and ordinary care, Plaintiffs and the putative Class have been caused to suffer losses and damages, including the cost of repairing and replacing the PEX Products, interruption of their businesses and home life, damage to their homes, businesses and personal property due to leakage, and other incidental expenses associated with the failure of Defendant's PEX Products, all of which damages were foreseeable by Defendant.
>
> 103. Plaintiff and Class members comprise an identifiable class, which Defendant knew or had reason to know were likely to suffer damages as a result of its conduct, including property damage beyond that sustained only to the Defective NIBCO PEX Products.

[Doc. 1, pp. 22-23.] He alleged elsewhere in the Complaint that NIBCO manufactures the PEX

Products, that the tubing material had improper cross-linking, and that the tubing had insufficient stabilization. He alleged the plumbing system did not do what a residential plumbing system is supposed to do—carry water throughout his home without allowing it to leak into places where it was not supposed to go. He further alleged NIBCO failed to use ordinary care, and that he was thereby damaged. The allegations are sufficient to apprise NIBCO of what Budach's claims are, and state a plausible claim for relief under Missouri law. Contrary to NIBCO's argument, Budach's allegation that the PEX Fittings were manufactured in conformity with a globally recognized standard does not dispose of his claims with respect to the Fittings. Budach alleges as part of his negligence claim that NIBCO failed to properly test or evaluate the PEX Products to ensure they would not fail when they were used for their intended purpose.

NIBCO submitted supplemental authority, a New Jersey District Court order filed in a class action in which NIBCO is also a defendant. [Doc. 41-1.] NIBCO points to the New Jersey District Court's dismissal of the negligence claim, for failure to plead more than a "laundry list of duties." [*Id.*, p. 20.] As explained in *Iqbal*, whether a claim is plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. The New Jersey authority is therefore not controlling here. Budach has alleged far more than a laundry list and generally speaking, residential pipes are not supposed to leak repeatedly if properly installed, making a claim of negligence plausible.

Budach's negligence claim is sufficiently pleaded.

### 2. Economic loss doctrine

NIBCO also argues that Budach's negligence claim is barred in part by the economic loss doctrine. To the extent Budach seeks to recover the cost of repairing or replacing the NIBCO PEX products, his claim fails. [*See* Doc. 1, p. 24, ¶ 113, alleging, as part of loss, "the cost of

replacement tubing and fittings".] The economic loss doctrine denies recovery for any loss that is purely economic, and thus precludes a claim of product liability or negligence with respect to damages to the product itself. *Pollard v. Remington Arms Co., LLC*, 2013 WL 3039797, at *2 (W.D. Mo. June 17, 2013) (*citing Clayton Center Associates v. W.R. Grace & Co.,* 861 S.W.2d 686, 692 (Mo. Ct. App. 1993), and *Sharp Bros. Contracting Co. v. American Hoist & Derrick Co.,* 714 S.W.2d 919, 922 (Mo. Ct. App. 1986)). Budach responds only that he has also alleged damage to his house. [Doc. 28, pp. 15-16.] Accordingly, Budach's negligence claim is barred by the economic loss doctrine to the extent he seeks to recover the cost of repairing or replacing the NIBCO PEX products.

### C. Count V, Violation of the MMPA

NIBCO argues that the MMPA claim, which sounds in fraud, fails to meet Rule 9(b)'s heightened pleading requirement that "the circumstances constituting fraud" be "state[d] with particularity."

The heightened pleading requirements of Rule 9(b) apply to a claim under a state consumer fraud statute, such as the MMPA, just as they do to common law fraud claims. Thus, an MMPA claim requires a plaintiff to allege facts such as "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). *See also Johnsen v. Honeywell Int'l, Inc.,* 2015 WL 631361, at *9-10 (E.D. Mo. Feb. 12, 2015) (an MMPA claim requires a plaintiff to provide details of the fraudulent acts, including where the plaintiff purchased the product at issue, and "when the acts occurred, who engaged in them, and what was obtained as a result"). *Compare Stephens v. Arctic Cat Inc.,* 2012 WL 628867, at *4 (E.D. Mo. Feb. 27, 2012) (denying motion to dismiss MMPA claim where the

plaintiff "provided specific information regarding the timing and circumstances of the alleged violation of the MMPA" by identifying "specific dates, places, dealerships, and individuals" in regard to the "statements and omissions that form[ed] the gravamen of his MMPA claim").

Budach alleged in his MMPA count that:

> 106. The Missouri Merchandising Practices Act ("MPA") was enacted to protect consumers from deceptive, fraudulent, unfair and misleading commercial practices and makes such practices unlawful.
>
> 107. The MMA provides that it is unlawful to "act, use or employ … deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale of advertisement of any merchandise in trade or commerce… in or from the state of Missouri." § 407.020.1 R.S.Mo.
>
> 108. Defendant's advertisements that its PEX Tubing was of a superior quality and that its cross-linking process produced the highest quality PEX tubing available constitutes a violation of § 407.020 R.S.Mo. since Defendant made an affirmative misrepresentation regarding the quality, characteristics, and durability of its PEX Tubing.
>
> 109. Defendant's representations that it would honor the terms of the PEX express warranty constitutes a false promise as well as the knowing concealment, suppression and omission of material fact under §407.020 R.S.Mo. because Defendant had no intention of honoring its obligations to replace any defective PEX Product under its express warranty.
>
> 110. Defendant's representation of the quality and durability of its PEX Products constitutes a misrepresentation under §407.020 R.S.Mo. because Defendant knew that the design and/or manufacturing defect led to a product that was defective, inferior, and not fit for its intended use.
>
> 111. Defendant also engaged in unlawful conduct in violation of the MPA by making knowing and intentional omissions. Defendant knowingly failed to disclose the PEX Product Defects in order to secure the sale of the PEX Products, and to offer them at a premium price.

11

> 112. As a result of Defendant's conduct, Plaintiff and the putative Class have suffered ascertainable losses in the form of direct monetary losses.
>
> 113. A causal relationship exists between Defendant's unlawful, false, deceptive, and misleading conduct and Plaintiff's and the putative Class' injuries, including, but not limited to, the amount of out-of-pocket losses from damage to Plaintiffs' and the putative Class' homes, businesses and personal property from water leaks, unpaid insurance claims, the cost to repair any leaks, and the cost of replacement tubing and fittings. Had Defendant not engaged in the aforementioned deceptive conduct, Plaintiff and the putative Class would not have purchased and installed Defendant's PEX Products in their residential and commercial properties.

[Doc. 1, pp. 24-25.]

In his suggestions in opposition, Budach states that the basis of his MMPA claim is limited to "material omission" by NIBCO, [Doc. 28, p. 11], not affirmative misrepresentation. As narrowed, however, the allegations still do not meet Rule 9(b)'s heightened pleading standard. Budach fails to allege with specificity the time and place of the conduct complained of, the content omitted, the identity of the person who omitted it, and what was obtained or given up thereby. Budach's allegation in paragraph 108—concerning NIBCO's advertisements that promoted the PEX Tubing's "superior quality" and "highest quality"—do not suffice for the required specificity, because the phrases are subjective advertising slogans constituting non-actionable puffery. *See Midwest Printing v. AM Int'l, Inc.*, 108 F.3d 168, 170-71 (8th Cir. 1997) (holding that claims of superiority of one product over another are subjective puffing incapable of supporting fraud claim); *Love v. Career Educ. Corp.*, No. 11-1585, 2012 WL 1684572, at *3-4 (E.D. Mo. May 15, 2012) (granting motion to dismiss because statements of opinion about quality of program were puffery).

Furthermore, unlike a misrepresentation claim under the MMPA, a claim for omission of a material fact under the MMPA has a scienter requirement. That is, a plaintiff must show the

12

defendant failed to disclose material facts that were "*known to him/her,* or upon reasonable inquiry *would [have been] known to him/her.*"  *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009) (citations omitted) (emphasis in original).  Although Budach generally alleges NIBCO knew or should have known of alleged defects in its products and argues that, "[m]ost importantly, [he] pled" NIBCO did not disclose the alleged defects [Doc. 28, p. 15], Budach does not specifically allege when and how NIBCO became aware of such facts, or should have become aware of them.

NIBCO's motion to dismiss Count V for violation of the MMPA is granted, and Count V is dismissed without prejudice.

### D.  Count VI, Unjust Enrichment

NIBCO argues that Budach's claim for unjust enrichment fails because it is premised on the existence of a valid contract—the express warranty, and separately, because Budach does not allege he personally conferred a benefit upon NIBCO.

Under Missouri law, to state a claim for unjust enrichment, a plaintiff must show that: (1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit.  *Executive Bd. of Missouri Baptist Convention v. Windermere Baptist Conference Center,* 280 S.W.3d 678, 697 (Mo. Ct. App. 2009).

An unjust enrichment claim is unavailable when the alleged benefit conferred is the subject matter of a contract.  *Dubinsky v. Mermart LLC*, 4:08–cv–1806–CEJ, 2009 WL 1011503, *5 (E.D. Mo. Apr.15, 2009); *see also Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enterprises, Inc.*, 2009 WL 2391769, at *4 (W.D. Mo. Aug. 3, 2009) (Plaintiffs failed to state a claim of unjust enrichment where they alleged they "conferred a benefit upon…Defendants in

13

the form of pre-need contract payments"; such claim cannot be premised on a contract). Here, Budach explicitly premised his unjust enrichment claim on NIBCO's violation of the express warranty. [Doc. 1, pp. 25, ¶ 116.] The claim therefore fails because any benefit conferred is the subject matter of a contract.

Budach points out that he plead his unjust enrichment claim "in the alternative to [his] contract claims," [Doc. 1, p. 24, ¶ 115], but that does not preclude dismissal. A plaintiff is "certainly entitled to bring an unjust enrichment claim as an alternative ground for relief." *Dubinsky*, 2009 WL 1011503 at *5 (*quoting Howard v. Turnbull*, 258 S.W.3d 73, 76 (Mo. Ct. App. 2008)). But here Budach's unjust enrichment claim is based in part on the warranty. He alleges he would not have "purchased NIBCO's PEX products had [he] known that those PEX Products were defective and that NIBCO would not honor the terms of its express warranty." [Doc. 1, pp. 24-25, ¶ 116.] Thus, his unjust enrichment claim arises out of the express warranty contract and must be dismissed. *See Dubinsky*, 2009 WL 1011503 at *5 (dismissing unjust enrichment claim plead in the "alternative" where the plaintiffs explicitly requested that they be awarded the interest payments due to them "but for the breach of contract" by defendant; the unjust enrichment claim arose out of a contract).

Count VI for unjust enrichment is dismissed with prejudice.

### E. Count VII, Declaratory and Injunctive Relief

Finally, NIBCO argues Count VII for declaratory and injunctive relief should be dismissed because the other six should be, and because declaratory and injunctive relief are not stand-alone causes of action under Missouri law.

Notwithstanding Budach's filing of his case in state court under state law, the removal of the case to federal court means the availability of declaratory relief is a matter of federal law,

14

governed by the Declaratory Judgment Act. *See G.S. Robins & Co. v. Alexander Chem. Corp.*, 2011 WL 1431324, at *1 n.l (E.D. Mo. Apr. 14, 2011). The Declaratory Judgment Act provides that in a "case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. As its language suggests, the Act "granted the federal courts discretion 'to make a declaration of rights; it did not impose a duty to do so.'" *Alsager v. District Ct. of Polk Cnty., Iowa*, 518 F.2d 1160, 1163 (8th Cir. 1975). Therefore, a district court should deny declaratory relief unless (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and (2) "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Id.* (citation and quotation omitted). Because the Court is not granting NIBCO's motion to dismiss in its entirety, it cannot conclude at this time that declaratory relief will serve no useful purpose. Therefore, the Court will not dismiss the claim for declaratory relief.

On the other hand, there is no cause of action for "injunction," under either Missouri or federal law. *Jackson County, Mo. ex rel. Nixon v. MERSCORP, Inc.*, 915 F. Supp. 2d 1064, 1072-73 (W.D. Mo. 2013). "Instead, [a plaintiff] must allege some wrongful conduct on the part of [the defendant] Defendant for which … injunction is an appropriate remedy." *Id.* (citations omitted). In his Complaint, Budach doesn't allege why injunctive relief is appropriate and given the Court's rulings on his claims, the Court does not see how injunctive relief would be appropriate or even possible

The motion to dismiss Count VII is denied with respect to the claim for declaratory relief, but is granted with respect to Budach's request for injunctive relief.

### F. Motion for leave to file the First Amended Complaint

After NIBCO's motion to dismiss was fully briefed, Budach was permitted to file a motion for leave to amend his complaint, with the proposed amended complaint attached and changes highlighted [Doc. 39], and he did so [Doc. 41].

Rule 15(a)(2) provides that a "court should freely give leave [to amend a pleading] when justice so requires." Leave to amend "should normally be granted absent good reason for a denial." *Popp Telcom v. Am. Sharecom, Inc.,* 210 F .3d 928, 943 (8th Cir. 2000).

Budach's proposed First Amended Complaint adds a few details to the original Complaint and the Court considered them, where relevant, with respect to NIBCO's motion to dismiss. While those details may be relevant to the claims that have survived NIBCO's motion, they are not dispositive of NIBCO's motion. Inasmuch as Budach's proposed First Amended Complaint contains counts the Court is dismissing, his motion for leave to file it is denied. However, within 14 days, Budach may file a motion for leave to file an amended complaint that is consistent with this Order.

## III. Conclusion

Defendant NIBCO, Inc.'s motion to dismiss [Doc. 24] is granted in part and denied in part, as follows:

- The motion is granted with respect to Count I (Breach of Express Warranty), Count II (Breach of Implied Warranty of Merchantability), Count III (Breach of Implied Warranty of Fitness for a Particular Purpose), and Count VI (Unjust Enrichment).

- The motion is granted with respect to the portion of Count IV (Negligence) that is precluded by the economic loss doctrine, specifically, the portion seeking to recover

the cost of repairing or replacing the PEX Product. The motion is denied with respect to the remainder of Count IV.

- The motion is granted with respect to the portion of Count VII (Declaratory and Injunctive Relief) seeking injunctive relief, and denied with respect to any claim for declaratory relief.

- The motion is granted with respect to Count V (Violation of the Missouri Merchandising Practices Act).

Budach's motion for leave to file his proposed First Amended Complaint [Doc. 41] is denied. However, within 14 days, Budach may file an amended complaint that is consistent with this Order.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 22, 2015
Jefferson City, Missouri